**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **VIRGINIA JAMES,**<br><br>   Plaintiff,<br><br>   v.<br><br>**FEDERAL ELECTION COMMISSION,**<br><br>   Defendant. | Civil Action No.  12-1451<br>(JEB)(JRB)(RLW)<br><br>Three-Judge Court |

    Before: BROWN, Circuit Judge; WILKINS, District Judge; and BOASBERG, District Judge

### MEMORANDUM OPINION

BOASBERG, District Judge:

Plaintiff Virginia James wishes to contribute to federal candidates and their committees. Although she has no desire to exceed the $2,500 limit on contributions to particular candidates, she seeks to make contributions <u>in the aggregate</u> beyond the $46,200 ceiling currently allowed by the Bipartisan Campaign Reform Act of 2002.  She has, accordingly, brought this suit against the Federal Election Commission, arguing that the aggregate limit on candidate contributions is unconstitutional.

At the time she filed this action, this same three-judge Court was considering the case of <u>McCutcheon v. FEC</u>, No. 12-cv-1034.  The plaintiffs there had challenged several of BCRA's aggregate limits, including the one James takes issue with.  We consequently stayed James's suit pending the resolution of <u>McCutcheon</u>.  Having now rejected all of the <u>McCutcheon</u> plaintiffs' claims, <u>see</u> --- F. Supp. 2d ---, 2012 WL 4466482 (D.D.C. Sept. 28, 2012), the Court may turn to

1

James's suit. Finding no basis to distinguish it from McCutcheon, the Court will dismiss her case as well.

## I. Background

According to the Complaint, which must be presumed true for purposes of this Opinion, Plaintiff is "a private individual" who "has given to political candidates in the past and plans to continue doing so." Compl., ¶ 5. During this biennium, she "has contributed at least $27,000 to candidate committees." Id., ¶ 15. She wishes, however, "to contribute more than the current sub-aggregate limit of $46,200 to various political candidates, but does not wish to exceed the $2,500 limit on contributions to each individual candidate." Id., ¶ 5 (citation omitted). In addition, she does not "wish to exceed the overall biennial limit of $117,000 on all contributions to candidates, PACs, and parties." Id. (citation omitted). "Rather, she wishes to take money that she may legally contribute to PACs and parties, and instead contribute it directly to candidates she wishes to support." Id. Indeed, the "only contributions Ms. James wishes to make during the balance of this biennium are direct contributions of up to $2,500 to individual candidate committees." Id., ¶ 21 (emphasis original).

To ensure that her desired contributions are legal, she filed this suit on August 31, 2012, challenging BCRA's aggregate limit of $46,200 on contributions to individual candidates as facially unconstitutional (Count I) and unconstitutional as applied to her (Count II). She then moved five days later for a preliminary injunction enjoining the FEC from enforcing the aggregate limits on contributions to candidate committees. See ECF No. 5.

An action filed after December 31, 2006, that is "brought for declaratory or injunctive relief to challenge the constitutionality of any provision" of BCRA "shall be filed in the United States District Court for the District of Columbia and shall be heard by a 3-judge court convened

pursuant to [28 U.S.C. § 2284]" if the plaintiff requests such a court.  See Pub. L. No. 107-155, 116 Stat. 113-14.  As Plaintiff here filed an unopposed request for a 3-judge court, Chief Judge David B. Sentelle assigned this matter to us.  See Amended Order of September 18, 2012.

Meanwhile, back in June 2012, Shaun McCutcheon and the Republican National Committee had brought an action against the FEC challenging the limits on contributions to both candidate and non-candidate committees.  This matter was assigned to the three judges of this Court, who received lengthy briefing from the parties and *amici curiae* and held a hearing on September 6, 2012.  Not wishing to duplicate efforts, we stayed James's case on September 19 pending the decision in McCutcheon.  See Minute Order of Sept. 19, 2012.  On September 28, the Court issued its Opinion in McCutcheon, rejecting all of the plaintiffs' challenges and dismissing the case.  See 2012 WL 4466482, at *7.  On October 1, we lifted the stay here and ordered Plaintiff to show cause why her case should not be dismissed for the reasons set forth in McCutcheon.  See Minute Order of Oct. 1, 2012.  Plaintiff then filed a Response to the Order to Show Cause, and the FEC has now, after invitation from the Court, filed an Opposition.

**II.    Analysis**

Our holding in McCutcheon must be the point of departure here.  By way of background, we first explained the structure of BCRA, noting, "During each two-year period starting in an odd-numbered year, no individual may contribute more than an aggregate of $46,200 to candidates and their authorized committees or more than $70,800 to anyone else."  2012 WL 4466482, at *2 (citing 2 U.S.C. § 441a(a)(3)).  Added together, these sums equal $117,000. McCutcheon himself desired to contribute additional amounts to candidates, which would yield a total of $54,400, thus exceeding the $46,200 cap.  Id.  He also wished to make contributions to national party committees of $75,000, which would similarly exceed the $70,800 ceiling.  Id.

McCutcheon, accordingly, challenged both aggregate limits, arguing, for instance, that the $46,200 candidate limit was "unsupported by any cognizable government interest . . . at any level of review" and was "unconstitutionally low." Id. at *3 (internal quotation marks omitted).

In rejecting his challenge, we first disagreed with his position that the limits should be subject to strict scrutiny: "Contribution limits are subject to lower scrutiny because they primarily implicate the First Amendment rights of association, not expression, and contributors remain able to vindicate their associational interests in other ways . . . ." Id. at *4 (citing Buckley v. Valeo, 424 U.S. 1, 22, 28 (1976)). The Court then explained that "[t]he government may justify the aggregate limits as a means of preventing corruption or the appearance of corruption, or as a means of preventing circumvention of contribution limits imposed to further its anticorruption interest." Id. (citing Buckley, 424 U.S. at 26-27, 38; footnote omitted). We thus held, "[W]e cannot ignore the ability of aggregate limits to prevent evasion of the base limits." Id. at *5 (citing Buckley, 424 U.S. at 38). Evasion could occur, for example, where large sums were contributed to a joint fundraising committee, which could then transfer money back "to a single committee's coffers." Id. (citations omitted). The committee, in addition, could "use the money for coordinated expenditures, which have no 'significant functional difference' from the party's direct candidate contributions." Id. (quoting FEC v. Colo. Republican Fed. Campaign Comm., 533 U.S. 431, 460 (2001)).

We also "reject[ed] Plaintiffs' arguments that the limits are unconstitutionally low and unconstitutionally overbroad" because, for one thing, "[i]t is not the judicial role to parse legislative judgment about what limits to impose." Id. at *6 (citing, *inter alia*, Randall v. Sorrell, 548 U.S. 230, 248 (2006) (plurality); Buckley, 424 U.S. at 30 ("[I]f it is satisfied that some limit on contributions is necessary, a court has no scalpel to probe, whether, say, a $2,000 ceiling

4

might not serve as well as $1,000.")).

James nevertheless maintains that her case does not fall within the ambit of McCutcheon's fairly broad holding for three principal reasons. First, she asserts that her challenge does not implicate the anti-circumvention rationale relied on by McCutcheon. See OSC Resp. at 1-2. More specifically, she notes that the plaintiffs in McCutcheon "sought to lift the aggregate limits on non-candidate committees, precisely the entities Buckley identifies as potential conduits for unearmarked contributions." Id. at 4. In this she is only half right. McCutcheon did not limit its anti-circumvention rationale to only non-candidate committees; instead, the reasoning applied equally to candidate committees. While the hypothetical we offered there involved the former, see 2012 WL 4466482, at *5, one is just as easily invented for the latter: If the $46,200 aggregate limit on candidate contributions were erased, James or anyone else could give at least $2.34 million (435 House candidates plus 33 Senate candidates multiplied by $5,000 – that is, $2,500 for primary and $2,500 for general election) to candidate committees (or possibly to a joint fundraising committee), which could then transfer those sums to certain preferred candidates or even to non-candidate national committees. See FEC Opp. at 4-5 (detailing candidate-to-candidate transfers).

While James believes this could not happen because "[s]he is not challenging the biennial aggregate limit of $117,000," OSC Resp. at 10 (footnote omitted), and "she does not intend to give more than the $117,000 Congress already allows," id. at 3 (footnote omitted), such belief rests on a fundamental miscomprehension of BCRA. There is no $117,000 total aggregate limit in the statute; instead, there are merely sublimits of $46,200 and $70,800, which add up to $117,000. See  2 U.S.C. §§ 441a(a)(3)(A), (B). Remove one of the sublimits, and there is no higher constraint.

James next contends that her case is different from McCutcheon because, instead of his facial challenge, she "brings a narrow as-applied challenge, one which accepts both the base limitation and the overall limitation imposed by Congress." OSC Resp. at 2. Passing the fact that one of her two counts is a facial challenge, see Compl. at 6, she nonetheless errs in her description of the law. As we just pointed out, there is no "overall limitation" of $117,000; there are only the two sublimits. So the notion that "this case presents specific contributions with specific limits," OSC Resp. at 8, is not accurate.

While Plaintiff is correct that a "decision on a facial challenge does not foreclose later, as-applied challenges," id. at 7 (citing Wisconsin Right to Life, Inc. v. FEC, 546 U.S. 410 (2006)), another three-judge court in this District has guidance on this type of suit:

> In general, a plaintiff cannot successfully bring an as-applied challenge to a statutory provision based on the same factual and legal arguments the Supreme Court expressly considered when rejecting a facial challenge to that provision. Doing so is not so much an as-applied challenge as it is an argument for overruling a precedent.

Republican Nat'l Comm. v. FEC, 698 F. Supp. 2d 150, 157 (D.D.C. 2010) (three-judge court), aff'd mem., 130 S. Ct. 3544 (2010). It should be recalled that McCutcheon only wanted to contribute $54,400 to candidate committees, which represents less than half the $117,000 James seeks to give. See 2012 WL 4466482, at *2. The factual arguments James raises, therefore, are even less compelling than McCutcheon's, while the legal arguments are no different in relation to candidate limits. And even if Plaintiff had been right that a $117,000 limit existed – thereby enabling her to claim that such a limit was constitutional, but $46,200 was not – McCutcheon explained that Congress, not the courts, draws these lines. See 2012 WL 4466482, at *6.

James's final argument is that even if McCutcheon is viewed as an as-applied challenge, the facts here are so dissimilar as to render McCutcheon non-binding. See OSC Resp. at 2-3. In

6

particular, James argues that "[s]he brings this challenge alone, without any political party, political action committee, or other entity. She is not challenging any of the other sub-aggregate contribution limits. She is not challenging the biennial aggregate limit of $117,000." Id. at 10 (footnote and internal footnote omitted). Yet none of these points, singly or in concert, is remotely persuasive: McCutcheon's holding did not rest on the presence of the RNC as a plaintiff; that James is not challenging the non-candidate limit does not strengthen her candidate-limit challenge; and, as we have reiterated, there is no $117,000 biennial limit that exists beyond the sublimits.

### III. Conclusion

Because the outcome of James's suit is dictated by what we have already decided in McCutcheon, we will contemporaneously issue an Order dismissing the case.

_____/s/_____
JANICE ROGERS BROWN
United States Circuit Judge

_____/s/_____
ROBERT L. WILKINS
United States District Judge

_____/s/_____
JAMES E. BOASBERG
United States District Judge

Date:  October  31, 2012